IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-2362-REB-KLM

RAYMOND MONTOYA,

Plaintiff,

v.

BRUCE NEWMAN, in his official capacity as the Sheriff of Huerfano County Jail;
LARRY GARBISO;
DOE #1-2, detention officer at Huerfano County Jail;
DOE #1-2, medical staff member at Huerfano County Jail; and
DR. NEECE

Defendants.

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' AMENDED PARTIAL MOTION TO DISMISS

Plaintiff, Raymond Montoya, by and through their attorney, Raymond K. Bryant

of LONN HEYMANN LAW FIRM, P.C., hereby responds to Defendants' Amended

Partial Motion to Dismiss as follows:

1.      On September 12, 2012, Defendants Newman and Garbiso filed an

Amended Partial Motion to Dismiss ("Defendants' Motion"), which included a 12(b)(6)

challenge to Plaintiff's First Claim for Relief (deliberate indifference to serious medical

needs of Huerfano County inmates) and a 12(b)(1) challenge to Plaintiff's Third Claim

for Relief (negligence). Plaintiff's Second Claim for Relief pertaining to deliberate

indifference to Mr. Montoya's symptoms and signs of medical illness remains unchallenged. Plaintiff addresses Defendants' two challenges in turn.

**I. Plaintiff's First Claim for Deliberate Indifference to Serious Medical Needs of Huerfano County Inmates Alleges Sufficient Facts to Meet the Pleading Standard Required by Fed.R.Civ.P. 8.**

2. Defendants' 12(b)(6) challenge appears to be more critical of the strategic reason why Plaintiff separated the First Claim for Relief from the Second Claim, rather than the question of whether there are sufficient facts pled to support it. For example, Defendants' one-page argument muses about "the purpose of two § 1983 claims." Defendants Motion at 6. Defendants challenge that Plaintiff has duplicated his claim by arguing that a claim for "Eighth and/or Fourteenth Amendment rights… is already asserted in Plaintiff's second through Plaintiff's second claim for relief." *Id*. To the extent that Defendants invoke *Iqbal* to suggest that Plaintiff has not pled sufficient facts to overcome a "heightened pleading standard" Defendants do not detail any specific deficiencies of Plaintiff's complaint. Defendants merely hurl a boiler-plate challenge that "the claim does not set forth a plausible claim for relief." *Id.* at 7. As such, Defendants' motion for summary judgment does not appear to be a true request to dismiss the claim, it appears to be a request for Plaintiff's pleading and/or litigation strategy.

3. Plaintiff's purpose behind separating the First and Second Claims for Relief is to conceptually separate two types of deprivations that Plaintiff suffered at the

hands of the Defendants. The First claim articulates that deliberate indifference to foul/unhealthy conditions known at the facility created the circumstances that proximately caused Mr. Montoya (and others) to become afflicted with the kinds of diseases detailed in the complaint (MRSA and sepsis, among others). The Second claim articulates that deliberate indifference to obvious symptoms and signs of Mr. Montoya's medical illness (once he caught the diseases) created the circumstances that proximately caused Mr. Montoya to needlessly suffer as his medical condition became worse and even grave. If Defendants had cured the conditions that caused inmates to be afflicted by the diseases in the first place, Mr. Montoya might not have ever contracted the illness in his particular case. If Defendants had attended to Mr. Montoya's illness once he became afflicted, his condition might not have become aggravated to the point that he was given only a 10% chance to live by medical professionals when he was subsequently treated. Although both claims involve a deliberate indifference claim pursuant to the Eighth and/or Fourteenth Amendments, each claim is distinguishable by the type of deliberate indifference to medical, health and safety issues that caused (a) the original illness and (b) the aggravation of the illness. Evidence that proves the Defendants knew of but disregarded a serious risk of medical harm to Mr. Montoya in each circumstance will be different depending on each of these two claims. Either and/or both claims might warrant different types of compensatory and punitive damages. Justice demands that both the more generalized and the more specific violations be redressed.[1]

---

[1] Defendants are correct that Plaintiff communicated early on the litigation that Plaintiff is not planning to make this a class-action lawsuit. However, the First Claim for Relief does broaden type of injury, the potential plaintiffs and the scope of discovery. Plaintiff reserves the right to have other plaintiffs join in the litigation if it becomes clear that such parties' interests are joined in the common nucleus of operative

4.      To meet the standard for a Constitutional Deprivation under these types of circumstances, a plaintiff must articulate (1) the medical need of an inmate is sufficiently medically serious, such that the conditions of incarceration pose a substantial risk of serious harm, and (2) that a Defendant knew an inmate faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999); *See also Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Plaintiff's First claim for relief articulates in pertinent part that:

• Prior to May 10, 2010, Defendants Sheriff Newman, the Sheriff's department and his employees, including final decisions-makers regarding medical care at the facility, had information indicating that the jail was being operated in an unhealthy and dangerous condition: the facility was unsanitary, harbored disease, and inmates had gotten sick or were unusually susceptible to sickness because of the health conditions of the jail facility. Plaintiff's Amended Complaint at ¶ 38.

• By March 10, 2011, many prior instances of inmate infections had contributed to a reputation that the facility harbored disease that forced those afflicted to seek treatment once they had been released. *Id.* at ¶ 39.

• Despite having direct notice of the health condition of the jail, and the danger to the inmates imprisoned there, including Mr. Montoya, none of the Defendants or Defendants' employees took action to clean the facility, to prevent affliction of the illnesses harbored by the facility, or to properly treat those afflicted at any time before or during the time Mr. Montoya became ill. *Id.* at ¶ 40.

This is sufficient to set out a distinct Eighth and/or Fourteenth Amendment claim, pursuant to *Farmer* and its progeny.

5.      Contrary to Defendants' assertion that a "heightened pleading standard" requires Plaintiff to plead more detailed factual allegations in his Complaint, the Tenth Circuit has interpreted clearly that the concept of "plausibility" imposed by *Iqbal* does

---

facts. However, Plaintiff alleges that he has standing as one of those parties afflicted by the circumstances and the disease(s).

not raise the pleading standard of civil rights cases even if a defendant asserts a qualified immunity Defense. *See Asten v. City of Boulder,* 652 F.Supp.2d 1188, 1199 (D.Colo. 2009), (*citing Currier v. Doran,* 242 F.3d 905, 916– 17 (10th Cir.2001)). Notice pleading is still the standard by which complaints are to be judged. Pursuant to Rule 8, a pleading must merely state a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Gee v. Pacheco,* 627 F.3d 1178 (10th Cir. 2010); C.R.C.P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"*Asten,* 652 F.Supp.2d at 1195; *Erickson v. Pardus,* 551 U.S. 89, 95, 127 (2007) (per curiam) (quoting *Twombly,* 550 U.S. at 555). Plaintiffs' allegations go well beyond those necessary to meet these basic requirements.

**II.     Plaintiff's Third Claim for Negligent Operation of a Jail Facility is Excepted by Waiver from Colorado's Governmental Immunity Act and No Exception-to-the-exception Applies Under the Facts.**

6.     Defendants' 12(b)(1) challenge asserts that Plaintiff's Third Claim for Relief is barred by the Colorado's governmental immunity provision ("CGIA") because an exception to the immunity waiver applies. However, Defendants' argument that the facts of this case fit the narrow circumstances under which 24-10-106(1.5) negates the exception to the waiver of immunity misinterprets the applicable facts and the statutory exception-to-the-exception for governmental immunity.

7. First, as a preliminary matter, both parties fully briefed this issue before the case was removed from the Huerfano District Court. Plaintiff hereby incorporates his arguments in the response brief (Docket 1-14). However, for the purposes of ease and consolidation, Plaintiff summarizes the arguments as follows.

8. Colorado's CGIA grants immunity from liability in all claims for injury which lie in tort or could lie in tort, with the exception of several specified torts, including the operation of a correctional facility or jail. *See* C.R.S. §24-10-106(1)(b). Defendants do not dispute that Plaintiff's claim for negligence is situated as a claim for negligent operation of a jail as identified by the statute. Generally, the waiver of immunity permits Plaintiff to move forward on his claim, knowing that jurisdiction is proper pursuant to the statute. *Id.*

9. However, an exception-to-the-exception (or an exception to the immunity waiver) applies under the limited circumstances where a citizen is "convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction." *See* C.R.S. § 24-10-106(1.5)(a). Under such circumstances the original waiver of immunity would be negated; jurisdiction is not proper for a plaintiff who is injured while being incarcerated pursuant to a conviction. The pertinent question then is: whether Mr. Montoya was incarcerated pursuant to a conviction at the time he was injured by Defendants.

10. It is clear under the circumstances of this case that Mr. Montoya was not incarcerated pursuant to a conviction because he *never received a conviction sentence that included jail time:*

- At some time before March, 2011, Plaintiff pled guilty to a crime for which he received a sentence of four months supervised probation. It is undisputed that Plaintiff was not sentenced to incarceration.

- On or about March 3, 2011, Plaintiff's probation officer alleged that Plaintiff violated the terms of his probation by testing positive for cocaine use. Based upon this allegation, his probation officer arrested and held Plaintiff pursuant to C.R.S. §16-11-205. *See* Defendants' Exhibit A submitted with the original Motion to Dismiss (Docket 1-10). C.R.S. § 16-11-205(1) provides a probation officer independent statutory authority to hold a probationer if the officer has probable cause to believe the probationer committed a crime or violated the terms of his parole.

- Plaintiff's probation officer gave written notice of the arrest to the original sentencing court and did not request revocation of Plaintiff's probation. Instead, Plaintiff's probation officer requested that Plaintiff be released from jail after seven days. *Id.*

- The sentencing court did not revoke Plaintiff's probation after being notified. After seven days passed, the sentencing court granted the request of Plaintiff's probation officer to release Mr. Montoya. *See* Defendants' Exhibit B submitted with the original Motion to Dismiss (Docket 1-10).

- During the intervening time between March 3, 2011 and March 10, 2011 (the seven days permitted by C.R.S. 16-11-205(1) for a probation officer to investigate an alleged violation of probation), Plaintiff suffered the Constitutional

deprivations and negligence that give rise to Plaintiff's claims in the Amended Complaint.

11.     There is no Court order imposing an incarceration sentence upon Mr. Montoya. Therefore, on the face of the factual circumstances, the exception-to-the-exception for governmental immunity cannot apply.

12.     Defendants argue that the court's order imposing probation eventually resulted in incarceration because Mr. Montoya violated the terms of the probation and Mr. Montoya's probation officer incarcerated him. However, the Court never found that Plaintiff violated the terms of his probation. In order to convict Mr. Montoya for violating the terms of his parole, the Court would have been required to hold two separate due-process hearings – a preliminary hearing to determine whether the probation officer's factual allegations of violation were true and a final revocation hearing to determine whether modification of the original sentence would be warranted. *Gagnon v. Scarpelli,* 411 US 778, 784 (1973). There is no evidence that any due-process hearings were conducted concerning the allegation that Mr. Montoya violated the terms of his probation. In fact, the motions and the court order regarding the issues show that such hearings were never even contemplated. *See* Defendants' Exhibits A and B.

13.     The definitive reason that Mr. Montoya was held was because his probation officer *suspected him* of violating the terms of his probation. Mr. Montoya's probation officer is entitled by statute to hold any probationer who is suspected of violating for a 7-day period while the probation officer collects evidence regarding the alleged violation. Thus, Plaintiff was not incarcerated pursuant to a conviction, because

Plaintiff was not even held pursuant to the Court's direction. Mr. Montoya was held pursuant to the independent and temporary authority of a probation officer. This power is much like the temporary, discretionary authority given to peace officers to arrest free citizens if the officer possesses probable cause to believe a person has committed a crime. In such circumstances, the peace officer does not pass judgment or impose sentencing; the peace officer merely arrests and defers to the criminal court to find facts and impose sentencing. Thus, like a temporary arrestee must wait in jail for a hearing to determine whether there was probable cause for an arrest, Mr. Montoya was incarcerated and forced to wait for the court to act on potential revocation charges. In this case, revocation proceedings were never initiated, Plaintiff was simply ordered to be released. *See* Defendants' Exhibit B.

14.    Even if the sentencing court's March 10, 2011 order were interpreted to sanction a modification of the conditions of Mr. Montoya's probation (without a modification hearing), the order came after the Constitutional injuries were inflicted and cannot provide a factual basis for this Court to find that Mr. Montoya was incarcerated pursuant to conviction or revocation, retroactively. Regardless, Plaintiff was never ordered to serve a sentence of incarceration. The only relevant duration of time Plaintiff was incarcerated was during the week of March 3-10, 2011 - pursuant to a probation officer's hold, as distinguished from a court-order.

15.    In addition to these facts, C.R.S. § 24-10-106(1.5)(b) (the counterpart to C.R.S. § 24-10-106(1.5(a)) gives guidance as to the intent of the legislature and the limits of the immunity waiver Defendants seek to inappropriately apply. Section (1.5)(b) holds

that the exception to the waiver of sovereign immunity for a claimant who is "convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction" does not apply if a claimant is incarcerated but not yet convicted of the crime for which such claimants are being incarcerated. *Id.* Even interpreted in the light most favorable to Defendants, no court conviction caused Mr. Montoya to be incarcerated, an allegation of violation caused Mr. Montoya to be incarcerated.

16.     Several key facts illustrate that the circumstances at issue are much more like those described in Section (1.5)(b) as compared to (1.5)(a). Mr. Montoya was originally sentenced to four months of probation, not incarceration. The Colorado Supreme Court has long held that a sentence of probation is not a form of incarceration. *Beecroft v. People,* 874 P.2d 1041, 1045 (Colo. 1994); *See also People v. Flenniken,* 749 P.2d 395, 399 (Colo. 1988); *People v. McDaniels,* 844 p.2d 1257, 1258-59 (Colo.App1992). Probation revocation following a conviction sentence is not even a stage of a criminal prosecution. *Gagnon v. Scarpelli,* 411 US 778, 782 (1973). "Revocation is, if anything, commonly treated as a failure of supervision." *Id.* at 785. Although a trial court ordering revocation may impose any sentence on a probationer that might have originally been imposed or granted, revocation results in a different factual predicate upon which a different sentence may be imposed. *McDaniels,* 844 P.2d at 1258. Therefore, the probation sentence that Mr. Montoya received pursuant to his original conviction was distinct from any subsequent incarceration sentence that *might* have been imposed as part of a revocation proceeding. The 7-day duration of time that Mr. Montoya spent in jail was a discretionary waiting period permitted for the officer to "investigate"

the possibility of revocation. *See* Defendants' Exhibit B; C.R.S. § 16-11-205(4). If Plaintiff's probation officer would have initiated revocation proceedings against Mr. During this time, before Mr. Montoya is convicted of anything, he should be treated like a pretrial, or other similarly situated detainee, for which C.R.S. § 16-10-106(1.5)(b) ensures the right to maintain an action for negligent operation of a jail facility. *See State v. Nieto,* 993 P.2d 493, 499, 507 (Colo. 2000); *Ayala v. San Nicolas,* 2007 WL 135608 *1-2 (D.Colo. 2007).

**III.     There is no need for the Court to hold a Trinity hearing because there is no dispute regarding the facts, the Exhibits provided by Defendants demonstrate that Mr. Montoya was not incarcerated pursuant to a conviction, and Plaintiff has pled willful and wanton conduct by the Defendants.**

17.     Although a Trinity hearing may be appropriate for the Court to find facts to determine whether jurisdiction is appropriate in this case, the Court need not do so if the alleged jurisdictional facts are not in dispute. *Padilla v. School District No. 1*, 25 P.3d 1176, 1180 (Colo. 2001). Here, the parties do not dispute the jurisdictional facts at issue, the parties dispute only the interpretation of those facts. On one hand, Defendants argue that a sentence of probation can morph into a court-ordered sentence of incarceration, if a probation officer alleges and holds the probationer pursuant to his authority under C.R.S. § 16-11-205(1). On the other hand, Plaintiff alleges that since there was no court-order imposing incarceration during the time Plaintiff suffered the negligence that gives rise to

the claims in Plaintiff's complaint, it is an easy decision for this Court to find that the exception-to-the-exception described in C.R.S. § 16-10-106(1.5)(a) does not apply. The Defendants' own exhibits provide the Court with certainty that the court that the original sentencing court did not impose an incarceration sentence. This dispute is ripe for the Court's interpretation. Since waiver of immunity can be determined as a matter of law, Defendant is not entitled to a *Trinity* hearing. *Padilla,* 25 P.3d at 1180.

18. Defendant is not entitled to dismissal pursuant to C.R.C.P. 12(b)(1) because the Colorado Governmental Immunity Act's waiver of governmental immunity for a sheriff's "operation of (a) jail" gives this Court subject matter jurisdiction over this case. *Trinity Broadcasting v. City of Westminster*, 848 P.2d 916 (Colo. 1993); C.R.S. 24-10-106(1)(b).

19. Moreover, regardless of the immunity provisions related to operation of a jail facility, Plaintiff's Amended Complaint alleges conduct that is willful and wanton pursuant to C.R.S. § 24-10-118. Colorado's GIA does not grant immunity that affects subject matter jurisdiction where such allegations are pled. *Davis v. Paolino,* 21 P.3d 870, 873 (Colo.App. 2001). Plaintiff's Amended Complaint does not merely articulate the conclusory allegation that "the defendants committed willful and wanton conduct," Plaintiff's factual assertions provide a basis upon which a reasonable inference may be drawn that Defendants' conduct was willful and wanton. The entire Amended Complaint rests on the basic allegation(s) that the individual and municipal Defendants knew of and disregarded a substantial risk to the safety of the inmates, including Mr. Montoya, and that Mr. Montoya (and other inmates) became sick with a life-threatening illness. The

alleged conduct, on its face, suggests willful and wanton disregard for the safety and rights of the Huerfano inmates, including Mr. Montoya.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully prays that the Court DENY Defendants request for dismissal and for a *Trinity* hearing and find that subject matter jurisdiction is proper on the pleadings and evidence submitted.

Respectfully submitted this 3rd day of October, 2012.

LONN HEYMANN LAW FIRM, P.C.

*s/   Raymond K. Bryant*
Raymond K. Bryant
Lonn Heymann Law Firm, P.C.
1391 Speer Blvd., Suite 550
Denver, CO 80204
P: 303-825-9100
F: 303-416-4246
Raymond@HeymannLegal.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 3rd day of October, 2012, a true and correct copy of the **PLAINTIFF'S RESPONSE TO DEFENDANTS' AMENDED PARTIAL MOTION TO DISMISS** was electronically filed via the *ECF System* and proper addressed to the following:

Ann B. Smith, Esq.
asmith@vaughandemuro.com

Steve Mullin, Esq.
smullen@rmmattys.com

_s/ Raymond K. Bryant_____