IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-2362-REB-KLM

RAYMOND MONTOYA,

Plaintiff,

v.

BRUCE NEWMAN, in his official capacity as the Sheriff of Huerfano County Jail;
LARRY GARBISO;
DOE #1-2, detention officer at Huerfano County Jail;
DOE #1-2, medical staff member at Huerfano County Jail; and
DR. NEECE,

Defendants.
_____

**PLAINTIFF'S TRIAL BRIEF**
_____

Plaintiff, Raymond Montoya, by and through his attorneys, hereby submits the following brief addressing evidentiary issues likely to arise at trial, as follows:

I. **Plaintiff has broadly pled claims involving not only individual liability, but also municipal liability and negligence, which make a wide array of evidence relevant at trial.**

Defendants argue in Reply to the Motion for Summary Judgment that Plaintiff has attempted to advance unpled claims for relief. *See* Doc. 174 at 1-3. They assert that many of Plaintiff's municipal theories articulated in response to summary judgment should be ignored because the pertinent portion of Plaintiff's Amended Complaint that alleges municipal liability only pleads a faulty supervisory liability claim. *Id.* This is based on Defendants' misquotation and misunderstanding of a key portion of paragraph 51 of

1

Plaintiff's complaint, which they assert says "Newman made or reviewed the decision to deny Plaintiff medical care." *See* Doc 174 at 2. This is not accurate. Plaintiff's second claim against Defendant Newman has always been an "official capacity" claim, which alleges liability based upon "decision*s* that deprived Mr. Montoya of reasonable medical care" by "Sheriff Newman and/or other final policymakers." The claim was designed to overlap with Plaintiff's negligence claims for "negligently training and supervising their detention and medical staff," and "negligence that made injury to Mr. Montoya and other Huerfano County Jail inmate likely." *See* Amended Complaint at ¶ ¶ 51, 58, 59.

Plaintiff has not amended the complaint since very early in the litigation and has relied on the document as a basic notice pleading device that would be broadly construed. See *In re Gen. Motors Corp.*, 385 F. Supp. 2d 1172, 1174-75 (W.D. Okla. 2005) ("[U]nder the liberal pleading standard of Fed.R.Civ.P. 8(a), the court broadly interprets the plaintiff's complaint . . . ."). The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002)); *see also Harbin v. Assurance Co. of Am.*, 308 F.2d 748, 750 (10th Cir. 1962) ("Under the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties."). It is the fruits of discovery as well as summary judgment responses that generally give more specific definition to the theories of claims that will be presented at trial. *See Turck v. Baker Petrolite Corp.*, 10 F. App'x 756, 762-64 (10th Cir. 2001). To the extent that Defendants argue that Plaintiff's complaint did not spell out the specific theories of liability

that would be advanced, "notice pleading requires the plaintiff to set forth in his complaint *claims for relief,* not causes of action, statutes or legal theories." *See* Fed.R.Civ.P. 8(a)(2); *Swierkiewicz,* 534 U.S. at 512. Defendants were provided adequate notice of Plaintiff's criticisms of the policies and procedures that would be pursued from Plaintiff's questions in discovery and Plaintiff's expert reports, which address virtually all of Plaintiff's theories that were articulated in the summary judgment response. *See* Exs. to Pl.'s Resp. to Summary Judgment (Doc. 26, 27, and 30).

The Amended Complaint certainly provided sufficient notice that Plaintiff would be arguing for municipal liability caused by Defendant Newman and/or other policymakers' creation of policies, practices and/or lack of training, since Defendants' Motion for Summary Judgment challenged Plaintiff to come forward with evidence of those policies, practices, and customs that were a moving force behind the constitutional violations. *See* Doc 79 at 9, 13. In fact, Defendants quoted several portions of testimony from discovery that aimed to ferret out and explain the policies, procedures, and lack of training that likely caused problems in the facility. *See e.g.* Doc 79 at 2, 4. Defendants' clearly anticipated Plaintiff's argument that Defendant Newman exhibited deliberate indifference by failing to adequately train staff. *Id.* at 14. Thus, Defendants' assertion that permitting Plaintiff to address policies, practices, and failures to train would somehow surprise them at trial is disingenuous.

A liberal interpretation of Plaintiff's claims should permit Plaintiff to introduce a dearth of different types of evidence to demonstrate not only that Defendant Newman made municipal-level decisions that led to the inadequate provision of medical care to Plaintiff and other inmates, but that his deliberate indifference and negligence with regard

3

to the operation of the facility and supervision of staff likely contributed to Plaintiff's serious medical condition. In order to prove deliberate indifference, plaintiffs must often come forward with evidence of a longstanding pattern and practice or a failure to act in the face of notice, which is why Plaintiff must be permitted to introduce evidence of years of neglect and unsanitary conditions in the jail, as well as numerous ways in which the facility was utterly incapable of providing adequate medical care to inmates, and the disciplinary histories/misconduct of Defendant Neece and Defendant Garbiso which should have put Defendant Newman on notice that his employees/agents could not be trusted to adequately care for inmate health. For example, while Defendants' argue in their Trial Brief that evidence of the faulty conditions of confinement at the Huerfano County Jail from 2001 and even 2009 are remote and of little relevance, Defendants fail to acknowledge the common threads that wind through all of the complaints, including a faulty/broken HVAC/ventilation system, and consistent maintenance and neglect of the entire facility, which Defendant Newman (and his predecessor) apparently ignored for over a decade. This evidence must be admitted to show deliberate indifference to the dangerous conditions and inadequacies of the jail which would have made it obvious that a constitutional violation like the one at issue was looming around the corner, long before it happened.

**II. Discounts given and/or offered to Plaintiff because of his status under the Colorado Indigent Care Program are collateral sources and should be excluded from the billing records and trial.**

Because of the serious illness that plagued Plaintiff, he was treated at two different hospitals for a period of at least 15 days and carried from one hospital to the next via

"flight for life." Plaintiff's medical bills, together, total approximately $215,000. Of that total, approximately $104,000 was discounted by Centura Health due to Plaintiff's status in the Colorado Indigent Care Program ("CICP"). Eagle Air Med offered Plaintiff a discount of approximately $26,000 due to his status in the CICP - if Plaintiff paid $250 within the first 90 days of the first bill that was issued by Eagle Air Med.[1] These discounts and offers are collateral sources and should be excluded/redacted.

Tenth Circuit courts consistently identify the collateral source rule as holding that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." *Prager v. Campbell County Memorial Hosp.*, 731 F.3d 1046, 1058-59 (10th Cir. 2012) (quoting *Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203, 1205-06 (10th Cir. 2009)); *see also Leprino Foods Co. v. Factory Mut. Ins. Co.*, 653 F.3d 1121, 1135 (10th Cir. 2011) ("[I]f an injured party received some compensation from injures from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (citation omitted)); *Green v. Denver & Rio Grande Western R. Co.*, 59 F.3d 1029, 1032 (10th Cir. 1995) ("[T]he collateral source rule allows the plaintiff to seek full recovery from a tortfeasor even though an independent source has compensated the plaintiff in full or in part for the loss."). The primary rationale used to justify this principle is that "public policy favors giving the plaintiff a double recovery rather than allowing a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent

---

[1] Plaintiff did not pay the $250 due to a lack of discretionary income necessary to pay this and his other related medicl bills. There is not expected to be a dispute as of today, the full $27,125 is outstanding and currently due. The discount that was offered has expired.

5

source." *Green*, 59 F.3d at 1032; *see also Prager*, 731 F.3d at 1059, *Friedland*, 566 F.3d at 1206.

The Court in *Berg v. United States* defined a collateral source as, simply, "one which is distinct from the funds of the defendant." 806 F.2d 978, 985 (10th Cir. 1986). *Prager* held that "any discounts or write-offs reflected in [plaintiff's] medical bills were a benefit that came as a direct result of negotiations with those providers by Worker's Compensation – a source independent of the Hospital Defendants." *Prager*, 731 F.3d at 1059. In accordance with these principles, a discount received as a result of membership in the CICP should be treated the same as a discount received from worker's compensation or any other source of discount or write-off. Defendants should be required to pay the whole cost associated with the injuries they inflicted, including the reasonable value of the medical care provided.

### III. Evidence that Plaintiff did not file tax returns is inadmissible where Plaintiff was not required to file tax returns.

Defendants seek to use evidence that Plaintiff did not file tax returns for some years under the theory that this evidence is probative of plaintiff's character for truthfulness under F.R.E. 608(b). Doc. 183 at 3. Defendants' evidentiary theory is inapplicable where, as here, there is no evidence that Plaintiff was required to file a tax return. Defendants' authority for their argument constitutes a long string-cite that was literally cut and pasted from a Colorado Court of Appeals case analyzing this issue. *Compare* Doc 183 at 3-4 *with Leaf v. Beihoffer,* 338 P.3d 1136, 1141 (Colo. App. 2014). In *Leaf,* the court admitted evidence of not filing tax returns because the plaintiff-appellant had not filed returns for several years, despite being legally required to do so. *Id.* at

6

1140. But in *Reed*, (also included in Defendants' string citation), the court held that "if plaintiff was not required to file a tax return by law, then his failure to do so is not probative of credibility." *Reed v. Tokio Marine & Nichido Fire Ins. CO.,* 2010 U.S.Dist. LEXIS 62723, at *6 (D. La. 2010). Where Plaintiff was not required to file a tax return by law, Plaintiff did not *fail* to file tax returns. It is undisputed that a person may not have to file a tax return for a number of reasons, not least of which is that a person may not have received sufficient income to reach, for a proper source, to reach the filing threshold. While Plaintiff generally asserted in discovery responses and deposition that he could be paid as much as $10,000 in a six-month period (or seven or eight-month period, as Plaintiff's testimony demonstrates), Plaintiff would have to be working and doing odd jobs during a consistent period of time in order to earn such income. As Defendants have repeatedly pointed out, Plaintiff was a "frequent flier" in the Huerfano County Jail and other institutions. Moreover, his work has seasonal dips and declines. Thus, it is unlikely that he ever generated a consistent year of income over the filing threshold so as to have been required to file a tax return. Plaintiff simply didn't file returns that were probably not necessary and evidence regarding that matter is irrelevant.

Plaintiff's assertion, early in the litigation, that he suffered damages in an approximate amount of $10,000 as a result of the injuries he suffered from the incident was only an estimate based upon his reflection that he could make as much as $10,000 in one six-month period. *See* Doc. 183, Ex. A-1 at 22:2-20, 127:10-128:15.

### IV. Foundation Required to Prove Past Medical Expenses

Plaintiff will establish foundation to admit his past medical expenses at trial. Treating physicians from San Luis Valley Regional Medical Center and St. Mary-Corwin Medical Center are expected to testify as to the necessity of Plaintiff's treatments, including the decision to airlift the unconscious Plaintiff between the hospitals, as well as the reasonableness of his medical bills. Plaintiff's testimony and his medical bills themselves are *prima facie* evidence of the value of the treatment. *See id.; Kendall v. Hargrave*, 349 P.2d 993 (Colo. 1960). To the extent that Defendants cite out-of-circuit cases applying other state's law, those cases are not controlling here. *Davis v. Safeway Stores, Inc.*, 532 F.2d 489, 491 (5th Cir. 1976) (applying Texas law); *Smith v. Ardew Wood Prods., Ltd.*, No. C07-5641 FDB, 2009 WL 577270, at *2 (W.D. Wash. Mar. 5, 2009) (unpublished) (applying Washington law); *cf. Echols v. Unified Gov't of Wyandotte Cnty.*, No. 04-2484 JWL, 2006 WL 148887, at *5 (D. Kan. Jan. 19, 2006) (unpublished) (applying Kansas law for damages in § 1983 case); *Brandon v. Vill. of Maywood*, 179 F. Supp. 2d 847, 860 (N.D. Ill. 2001) (applying Illinois law in for proving medical bills in § 1983 case).

### V. Defendants should not be permitted to introduce video with audio from Montoya's teleconference appearance on March 4, 2011

Defendants recently obtained a three-minute video of Plaintiff in the jail on March 4, 2011. The video does not show any apparent evidence that Plaintiff was ill. But it does show Plaintiff in jail attire, while the judge, probation, and other persons discuss potential bond conditions. The video includes discussion of Plaintiff's criminal history, substance abuse history, elements that could arguably make him a flight risk, etc. This information

would be inflammatory to a jury and Plaintiff's appearance in the video would invite prejudice. Therefore, since any arguable relevance related to Plaintiff's medical condition is minimal, and the prejudice stemming from the appearance and discussion of others about Plaintiff is significant, the evidence should be precluded pursuant to FRE 403. If the Court permitted it to be shown to the jury, the Court should restrict the audio from being heard.

Respectfully submitted, July 20, 2015.

*s/ Raymond K. Bryant*
Raymond K. Bryant
1391 Speer Blvd., Suite 705
Denver, CO 80204
P: 720-515-6165
F: 303-416-4246
Raymond@rightslitigation.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 20, 2015, a true and correct copy of the **PLAINTIFF'S TRIAL BRIEF** was electronically filed via the *ECF System* and thereby addressed to the following:

Ann B. Smith, Esq.
asmith@vaughandemuro.com

Gordon Vaughan, Esq.
GVaughan@vaughandemuro.com

Michael Watts, Esq.
mwatts@rmmattys.com

Steve Mullen, Esq.
smullen@rmmattys.com

*s/ Raymond K. Bryant*